# IN THE MATTER OF THE PETITION OF CATHARINE A. DURKIN TO VACATE AN ASSESSMENT, ETC.

*Vacating an assessment in New York — failure of city authorities to designate " corporation paper" — duty of clerks of common council, as to publication.*

Where, upon an application to vacate an assessment in the city of New York, it appeared that, at the time of the passage of the ordinance directing the work to be performed, there were no newspapers lawfully designated by the city authorities in which to publish municipal proceedings, though the law required that such designation should be made, *held*, that as the law required the clerks

[*] See *post*, page 277.

of the boards of aldermen to publish such resolutions and ordinances, they could, in case the city authorities neglected to designate any corporation papers, publish the same in any newspaper published in the said city.

APPEAL by the mayor, etc., of the city of New York from an order vacating an assessment for the expenses of repaving Thirty-third street with Belgian pavement, from Sixth to Tenth avenues.

*J. A. Beall*, for the appellant.

*Irving Ward*, for the respondent.

DANIELS, J. :

The first assessment was made in 1852, for paving, resetting curb and gutter and flagging stones, between Sixth and Seventh avenues, and it was shown to have been paid in April, 1852. The last assessment was for the expense of paving the street with Belgian pavement, from Sixth to Tenth avenues. The resolution directing the work was passed by the board of assistant aldermen on the 14th of June, 1870, and by the board of aldermen on the twenty-third of August following ; and it was approved by the mayor on the twenty-sixth of that month. At that time the designation of newspapers for the publication of municipal notices, under the act of 1867, had ceased to be operative, and no effectual designation had been made under the act of 1868. For these reasons, publication of this ordinance was not required in either of the newspapers employed under the act of 1867 ; or which might have been, but were not employed under the act of 1868. Consequently, proof of the failure to publish in the newspapers employed in 1867 did not render the ordinance or resolution providing for the second pavement invalid.

But it was claimed that the failure to publish notice of the proceedings in the newspapers required to be designated by section 1 of chapter 383 of the Laws of 1870, must be attended with that result. The evidence proved that no designation of newspapers had been made, as that section of the statute required it to be done, when this ordinance or resolution was introduced and acted upon by the boards of aldermen and assistant aldermen, and was approved by the mayor. For that reason, publication in such newspapers was an actual impossibility, and yet publication had been positively required by a pre-

ceding act. That could not be complied with in any way if publication in newspapers designated by the city authorities was what the law was designed to require, for there were no such newspapers in existence. The designation made under the act of 1867 had expired. That which was attempted under the act of 1868 was never effectually completed, and none whatever had been made under the act of 1870. And still, by a preceding law, it had been made the duty of the clerks of the respective boards of aldermen to make the publication. When that duty was created there were no corporation papers whatever designated, in which municipal proceedings could be or were required to be published. And as the clerks had been subjected to the duty of making publication of the resolutions and ordinances, they could not be absolved from a failure to discharge it by reason of that circumstance. The result of this state of things was that they could lawfully publish them in any newspaper published in the city. That would comply with what the act of 1870 declared it to be the duty of the clerks to do. (Vol. 1, Laws of 1870, 369, chap. 137, § 20.)

This state of things continued until chapter 383 of 1870 went into effect, which provided that newspapers should be designated, and that these proceedings should be published in them. But as that could not be done until the designation should be made, and the duty to make publication was an absolute one, the clerks were at liberty to continue it in the same way that it could be done by them before chapter 383 went into effect. The failure to perform the duty, providing that a designation of newspapers should be made, did not discharge the clerks from the performance of that which had been positively imposed upon them, and for those reasons it is not to be presumed, without evidence, that no such publication as was required was made of the ordinance or resolution providing for this improvement. That was the conclusion arrived at in the *Case of Peugnet* (12 S. C. N. Y. [5 Hun], 434), under circumstances similar to those shown in support of this application. And the *Case of Levy* (11 id., 501), relied upon by the petitioner's counsel, is entirely consistent with this result; for it appeared there that no publication of the ordinance or resolution had been made. The want of publication was not established in this case, and as that was the only irregularity relied upon, the case of the petitioner was not made out. The order appealed from should

be reversed, and a rehearing of the case directed, with the usual costs to the appellants to abide the event.

Davis, P. J., concurred.

Present — Davis, P. J., Brady and Daniels, JJ.

Order reversed, rehearing ordered, ten dollars costs to appellants, to abide event.